**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO.** |
| | **:** | |
| **v.** | **:** | **VIOLATION: 18 U.S.C § 1014** |
| | **:** | |
| **RICHARD CUNNINGHAM,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**INFORMATION**

The United States charges that:

**COUNT ONE**

**Background**

1.     After leaving his position with the D.C. Housing Authority in or around 1999, RICHARD CUNNINGHAM ("CUNNINGHAM") began a career in real estate development, which focused on the District of Columbia ("D.C.") affordable housing market. Around 2001, CUNNINGHAM began Cunningham Real Estate Management LLC, which was then and still is based in D.C. He also owns and runs another D.C. business, Cunningham Real Estate Holdings, which, particularly in the last few years, has claimed to be "leading a quiet but powerful transformation to ensure veterans have a safe place to live."

**The Scheme to Defraud**

2.     Beginning in or around August 2020 and continuing through on or about May 2024, in the District of Columbia and elsewhere, CUNNINGHAM engaged in a scheme to defraud various private mortgage companies by, among other things, knowingly making false statements on and providing fraudulent documents in support of loan applications to those lenders, including with respect to whether CUNNINGHAM was renting his multifamily buildings to U.S. military

veterans. As a result of his false and fraudulent statements and documents, CUNNINGHAM intended to and did, in all but one case, obtain millions of dollars in loan proceeds based on his fraudulent misrepresentations. On a number of the fraudulent loan applications in his scheme, CUNNINGHAM involved PERSON A as his co-conspirator.

**Manner and Means**

It was part of the scheme that:

**False Statements Made to LENDER 1 Regarding Primary Loan Balances**

3.    From approximately July 1, 2020 to August 31, 2021, CUNNINGHAM, either alone or jointly with PERSON A, applied for and obtained six secondary renovation loans from LENDER 1. LENDER 1 is a Virginia-based private mortgage company that finances and refinances debt secured by an interest in real estate. LENDER 1's business affects interstate commerce.

4.    CUNNINGHAM applied for the secondary renovation loans with LENDER 1 to enable him to renovate and make improvements to six properties on which he already had mortgages. Those six properties were either owned by CUNNINGHAM alone, or were owned jointly by CUNNINGHAM and PERSON A.

5.    To obtain the six renovation loans from LENDER 1, LENDER 1 required CUNNINGHAM to have a certain threshold of equity in the properties for which he sought renovation loans, which LENDER 1 conveyed to CUNNINGHAM. CUNNINGHAM's equity in those properties would be used as collateral for the renovation loans.

6.    However, at the time CUNNINGHAM sought the renovation loans, he knew his equity in his six properties was insufficient to meet LENDER 1's threshold. Therefore, rather than face six declined renovation loan applications from LENDER 1, CUNNINGHAM instead submitted to LENDER 1 falsified mortgage statements for the primary level mortgages on his

properties, where he significantly reduced the amounts remaining on those loans to make it appear as though CUNNINGHAM had more equity in the collateralized property than he actually did.

7.      Relying on the falsified loan statements, LENDER 1 funded all six renovation loans for which CUNNINGHAM applied. The collateral properties and CUNNINGHAM's false statements may be summarized as follows:

| Date of False Statement to LENDER 1 | LENDER 1 Loan Amount | Property Address for Primary Loan/Collateral | Falsified Primary Loan Statement Amount | Actual Primary Loan Statement Amount |
|---|---|---|---|---|
| August 11, 2020 | $815,000 | 1601 17th Place NE, Washington, D.C. | $328,798.96 | $828,798.96 |
| February 17, 2021 | $800,000 | 116 Emerson Street NW, Washington, D.C. | $757,355.79 | $1,497,355.79 |
| March 2-4, 2021 | $560,000 | 537 Peabody Street NW, Washington, D.C. | $683,186.61 | $1,383,186.61 |
| April 11, 2021 | $832,750 | 1629 28th Street SE, Washington, D.C. | $1,000,782.00 | $1,600,782.00 |
| May 8, 2021 | $2,800,000 | 1616 27th Street SE, Washington, D.C. | $1,042,384.98 | $2,642,984.98 |
| July 8, 2021 | $1,665,000 | 4649 Hillside Road SE, Washington, D.C. | $385,000.00 | $985,000.00 |

8.      In total, CUNNINGHAM received loans totaling approximately $7,400,000 from LENDER 1 based on the above and similar false statements, which CUNNINGHAM knowingly made in support of those loan applications.

**False Statements Made to LENDER 2 Regarding Providing Veterans Housing**

9.      Beginning in or around April 2024, CUNNINGHAM, through PERSON A, approached another lender, LENDER 2, to obtain additional renovation financing for one of the above-named properties, 1616 27 Street SE, Washington, D.C. That property was originally owned by a limited liability company ("LLC") of which CUNNINGHAM was the managing member.

CUNNINGHAM registered the LLC with the D.C. Department of Consumer & Regulatory Affairs as 1616 27th Street Flats, LLC in December 2019.

10.    However, between December 2019 and April 2024, CUNNINGHAM purported to transfer his majority ownership of the property to PERSON A because PERSON A had better credit and could obtain loans more easily. With CUNNINGHAM's guidance and assistance, PERSON A then applied for a secondary renovation loan of $2,795,000 from LENDER 2 in or around April 2024. LENDER 2 is an Oregon-based private mortgage company that finances and refinances debt secured by an interest in real estate. LENDER 2's business affects interstate commerce. CUNNINGHAM's name appears within the loan application documents in various places, including as a "Project Manager" for the property.

11.    As a part of the loan application and to substantiate the property's future viability as an income generating, multi-unit rental property, CUNNINGHAM devised a plan where he fabricated and had PERSON A submit to LENDER 2 lease documentation purporting to be from a "Veterans Assistance Payments ('VAP')" program run by the U.S. Department of Housing & Urban Development ("HUD"), which purportedly provided "Veterans Administration Tenant-Based Assistance." CUNNINGHAM did so because he understood from communications with LENDER 2 that the company viewed federally backed rental income positively, especially where housing was being provided for miliary veterans.

12.    In reality, however, no such "VAP" program actually existed.

13.    Instead, CUNNINGHAM had taken and modified real Housing Assistance Program ("HAP") lease documents from the HUD's Housing Choice Voucher Program (also known as Section 8 housing), a program that provides rental subsidy payments to landlords who rent properties to low-income individuals. CUNNINGHAM took blank HAP lease documents,

and, among other things, changed all instances of "HAP" to "VAP" in the documents to make them appear to be legitimate, federally backed leases in support of United States military veterans. CUNNINGHAM then filled out the purported "VAP" lease documents with forged entries and signatures to make it appear to LENDER 2 that the 1616 27 Street SE property already had veterans living in the property through a federal voucher program.

14.    Stated differently, CUNNINGHAM represented to LENDER 2 that the property already had a steady income stream from military veterans receiving guaranteed federal funds when, in reality, it did not.

15.    Ultimately, LENDER 2 did not fund the requested $2,795,000 loan for CUNNINGHAM's 1616 27 Street SE property.

16.    However, around the same time, CUNNINGHAM, again through PERSON A, submitted to LENDER 2 a second loan application for $4,700,000 containing similar falsified documents, this time for a property at 205 61 Street NE, Washington, D.C. In addition to submitting fake "VAP" contracts, CUNNINGHAM also fabricated and had PERSON A submit fake rent roll documentation to LENDER 2, which purported to show that all tenants at the property held vouchers from the "VA." LENDER 2 funded that loan in or around May 2024. Thus, in total, CUNNINGHAM sought $7,495,000 in loans from LENDER 2 based on his knowing, false statements surrounding, among other things, that he and PERSON A had ongoing "VAP" contracts for veterans for the above-described two properties, when, in reality, no such "VAP" program actually existed.

17.    Thus, on or about June 25, 2024, for the purpose of executing and attempting to execute the above-described scheme, CUNNINGHAM, aided by PERSON A, knowingly made false statements and reports to LENDER 2, a mortgage lending business, for the purpose of

influencing LENDER 2 in connection with a loan for the property at 205 61 Street NE, Washington, D.C.; specifically, CUNNINGHAM, aided by PERSON A, submitted fraudulent "VAP" leasing contracts and fake rent roll documents to LENDER 2 in support of the $4,700,000 loan application for the property located at 205 61 Street NE, Washington, D.C. for the purpose of obtaining the loan.

**(False Statements to a Mortgage Lending Business,
in Violation of Title 18, United States Code, Section 1014)**

## FORFEITURE ALLEGATION

The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense in violation of 18 U.S.C. § 1343, set forth in Count One of this Information, the defendant,

## RICHARD CUNNINGHAM

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

## MONEY JUDGMENT

In the event of conviction, the United States may seek a money judgment.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §2461(c).

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By:    */s/ Samantha R. Miller*
Samantha R. Miller
Special Assistant United States Attorney
MA Bar No. 690454
United States Attorney's Office
601 D Street, NW Washington, D.C. 20530
202-527-1814
Samantha.Miller@usdoj.gov